IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH M. AMATO, on behalf of herself and all others similarly situated, Plaintiff, | : : : : | CIVIL ACTION |
| v. | : : | |
| UNITED GENERAL TITLE INSURANCE COMPANY, Defendant. | : : : | No. 08-3423 |

**MEMORANDUM AND ORDER**

Schiller, J.                                                                                                          March 17, 2009

      Plaintiff Deborah M. Amato brings this putative class action against Defendant United General Title Insurance Company ("United General"), alleging that she and others similarly situated were charged a basic rate for title insurance when they should have received lower "reissue" or "refinance" rates. Currently before the Court is Defendant's motion to dismiss for failure to exhaust administrative remedies and for failure to state a claim. For the following reasons, the motion is granted.

**I.     BACKGROUND**

      This action is one of a series of cases brought in Pennsylvania and other states against title insurance companies that allegedly overcharged consumers for title insurance. Plaintiff's Amended Complaint alleges that United General collected excess premiums from her and putative class members by charging them the "basic rate" for title insurance rather then the discounted "reissue rate" or "refinance rate" to which they were entitled.

      As a title insurance company, United General guarantees the correctness of title searches and

insures property owners against loss or damage incurred as a result of defects in their titles. (Am. Compl. ¶ 9; *see also* 40 PA. CONS. STAT. ANN. § 910-1(1) (2009).) Pennsylvania law regulates title insurance companies' rates and requires approval of those rates by the Commonwealth's Insurance Commissioner ("Commissioner"). 40 PA. CONS. STAT. ANN. § 910-37. For the purpose of establishing its rates, United General is a member of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP"). (Am. Compl. ¶15.) TIRBOP's rates, as set forth in it's manual ("TIRBOP Manual"), have been filed with and approved by the Pennsylvania Insurance Department. (*Id.* ¶¶ 17-19.) United General and its agents are required by law to charge the rates set forth in the TIRBOP manual. 40 PA. CONS. STAT. ANN. § 910-37(h) ("[N]o title insurance company or agent of a title insurance company shall charge any fee for any policy or contract of title insurance except in accordance with filings or rates which are in effect for said title insurance company or such agent of a title insurance company.").

The TIRBOP Manual, which Plaintiff has attached to her Amended Complaint, establishes a basic rate for title insurance, a reissue rate and a refinance rate. The reissue rate is discounted from the basic rate by ten percent. (Am. Compl. ¶ 22.) Pursuant to Section 5.3 of the Manual, "[a] purchaser of a title insurance policy shall be entitled to the reissue rate if the real property to be insured is identical to, or is part of, real property insured 10 years immediately prior to the date the insured transaction closes." (Am. Compl. Ex. A [TIRBOP Manual] § 5.3.)

The TIRBOP Manual also establishes a "refinance rate," which is available "[w]hen a loan policy is to be issued within four years of the date of the previously insured mortgage or fee interest, and the premises to be insured are identical to, or part of, the real property previously insured, and there has been no change in fee simple ownership." (*Id.* § 5.6.) The refinance rate is 70% of the

reissue rate when the title insurance company issues the new policy up to two years from the previously insured mortgage, and 80% of the reissue rate when it issues the new loan policy between two and four years from the initial mortgage date. (*Id.*) For either the reissue rate or the refinance rate to apply, evidence of previous insurance, which can be established by, among other things, an unsatisfied mortgage to an institutional lender, must be considered. (*Id.* §§ 2.8, 5.3, 5.6.)

Plaintiff obtained title insurance when she purchased her home in Southampton, Pennsylvania in September 2003. (Am. Compl. ¶¶ 28-29.) On two additional occasions, once in October, 2004 and again in November 2005, Plaintiff purchased title insurance in connection with home refinancings. (*Id.* ¶ 30.) Plaintiff refinanced her mortgage a third time on July 26, 2006. (*Id.* ¶ 31.) Patriot Real Estate Settlement Services ("Patriot"), an agent of United General, provided the closing and settlement services. (*Id.*) The loan amount for Plaintiff's 2006 refinance was $306,000.00 and Patriot, on United General's behalf, issued a lender's title insurance policy in that amount. (*Id.* ¶ 34.) Plaintiff was charged the basic rate for this policy, $1,888.75, instead of the refinance rate, $1,189.93, to which she was entitled. (*Id.* ¶¶ 35-36.)

Based on these facts, Plaintiff brings claims against United General on behalf of herself and putative class members for money had and received, unjust enrichment and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"). Plaintiff alleges that United General and its agents, including Patriot, owed her a fiduciary duty in connection with her refinancing transaction because they have superior knowledge regarding the laws governing title insurance and applicable rates. (*Id.* ¶¶ 32, 37, 66.) She also alleges that United General's failure to charge her the proper rate violated Section 910-37(h) of the Pennsylvania Title Insurance Companies Act ("TICA") and therefore constituted a *per se* violation of the CPL. (*Id.* ¶ 68.) The

Amended Complaint seeks to recover the damages suffered by the class members, punitive damages, statutory damages and treble damages pursuant to the CPL, as well as costs and attorney's fees. However, Plaintiff did not seek a refund from United General nor did she appeal to the Commissioner prior to filing this action.

**II.     STANDARD OF REVIEW**

United General's motion to dismiss for failure to exhaust administrative remedies challenges this Court's subject matter jurisdiction and is therefore governed by Federal Rule of Civil Procedure 12(b)(1). Challenges to subject matter jurisdiction, pursuant to Rule 12(b)(1), may be facial or factual. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction . . . [whereas] a 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005). Since the parties only reference the Amended Complaint and the exhibits attached thereto, the Court will treat United General's challenge as a facial one. When a defendant brings a facial attack, the court considers only the allegations in the complaint, which are taken as true, exhibits attached to the complaint and anything else properly considered on a 12(b)(6) motion for failure to state a claim. *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 438, 450 (M.D. Pa 2007); *see also Mortensen*, 549 F.2d at 891. Plaintiff bears the burden of establishing jurisdiction over her claims. *Kehr Packaging Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991); *Bell Atlantic-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 107 F. Supp. 2d 653, 659 (E.D. Pa. 2000).

**III.     DISCUSSION**

United General moves to dismiss Plaintiff's Amended Complaint for failure to exhaust administrative remedies and failure to state a claim.  United General predominately argues that Section 910-44(b) of TICA provides a mandatory statutory remedy that Plaintiff was required to exhaust prior to filing a lawsuit.  Plaintiff responds that TICA's remedy is discretionary and that she was therefore not required to exhaust that remedy prior to asking this Court for relief.

In Pennsylvania, when a statute provides an exclusive remedy, one must first exhaust that remedy prior to filing an action in court.  *See* 1 PA. CONS. STAT. ANN. § 1504 (statutory remedies are preferred over common law); *Jackson v. Centennial Sch. Dist.*, 501 A.2d 218, 220 (Pa. 1985) ("We have consistently held that where a statutory remedy is provided, the procedure proscribed therein must be strictly pursued to the exclusion of other methods of redress.").  In other words, a court lacks subject matter jurisdiction unless a claimant has exhausted his mandatory administrative remedies prior to filing a lawsuit.  *Terminato v. Pa. Nat'l Ins. Co.*, 645 A.2d 1287, 1291 (Pa. 1994).  If, however, a remedy is permissive, a court has jurisdiction to adjudicate the controversy.  *Id.*  Thus, the issue in this case is whether Section 910-44(b) of TICA establishes a mandatory remedy or a merely permissive remedy.  TICA provides:

> Every rating organization and every title insurance company which makes its own rates shall provide, within this Commonwealth, reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or title insurance company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected.  Any party affected by the action of such rating organization or such title insurance company on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days written notice to the appellant and to such

rating organization or insurer, may affirm or reverse such action.

40 PA. CONS. STAT. ANN. § 910-44(b).

Since the Pennsylvania Supreme Court has not yet determined whether Section 910-44(b) proscribes an exclusive remedy, this Court must predict how the Pennsylvania Supreme Court would rule on the issue. *See Nationwide Mut. Ins. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). In doing so, this Court "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as "dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996). Several Pennsylvania federal and state courts have addressed, on nearly identical facts and claims, whether Section 910-44(b) provides an exclusive remedy and have come to different conclusions.

In *Cohen v. Chicago Title Insurance Co.*, Civ. A. No. 06-873, 2006 WL 1582320 (E.D. Pa. June 5, 2006), the court held that the plaintiff was not required to exhaust the remedy provided in Section 910-44(b) prior to filing her claims for money had and received, unjust enrichment and for violation of the CPL. *See also Markocki v. Old Republic Nat'l Title Ins. Co.*, 527 F. Supp. 2d 413 (E.D. Pa. 2007) (following *Cohen*). The court concluded that the legislature's use of the word "may" instead of "shall" indicated that the remedy was discretionary. *See* 40 PA. CONS. STAT. ANN. § 910-44(b) (title insurance company must establish means "whereby any person aggrieved by the application of its rating system *may* be heard"); *id.* (when company fails to rule on request within thirty days "applicant *may* proceed . . . as if his application had been rejected"); *id.* (aggrieved party "*may* . . . appeal to the commissioner") (emphases added). To hold otherwise, the court reasoned,

6

would render surplusage language in Section 910-48 of TICA, which grants the Commissioner the ability to impose penalties for TICA violations "in addition to any other penalty provided by law." *Id.* § 910-48(a). The court also relied upon Pennsylvania case law permitting CPL and Lanham Act claims to proceed despite the Unfair Insurance Practices Act. *Cohen*, 2006 WL 1582320, at *2 (citing *Pekular v. Eich*, 513 A.2d 427, 430 (Pa. Super. Ct. 1986) and *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 168 (3d Cir. 2001)).

In contrast, *Uyehara v. Guarantee Title and Trust Co.*, Nos. 1679, 06-081086, 2008 WL 2227295 (Ct. Com. Pl. Phila. County Apr. 24, 2008) and *White v. Conestoga Title Insurance Co.*, Nos. 0388, 010082, 2008 WL 2227297 (Ct. Com. Pl. Phila. County Apr. 24, 2008), held that Section 910-44(b) of TICA establishes a mandatory administrative remedy that the plaintiffs in those cases were required to exhaust prior to bringing their claims for money had and received, unjust enrichment and violation of the CPL based on the defendants' failure to charge them the reissue or refinance rate. The opinions, which are essentially identical, rejected *Cohen*'s logic and concluded that the legislature's use of the word "may" in Section 910-44(b) was intended to "give[] the insured discretion in whether to abandon or proceed with her complaint rather than discretion as to where to seek relief." *Uyehara*, 2008 WL 2227295, at *3 n.2; *White*, 2008 WL 227297, at *3 n.1. The courts further concluded that Section 910-48's explicit statement "preserv[ing] the right of the commissioner to seek penalties other than those under the title insurance law," contrasted with Section 910-44(b)'s silence on common law remedies, suggested that the legislature did not intend to allow the insured to proceed to court in lieu of utilizing Section 910-44(b)'s remedy. *Uyehara*, 2008 WL 2227295, at *3 n.2; *White*, 2008 WL 227297, at *3 n.1.

In concluding that Section 910-44(b) provided an exclusive and adequate remedy for the

plaintiffs, the *Uyehara* and *White* courts predominately relied on the Superior Court's decision in *Maryland Casualty Co. v. Odyssey Contracting Corp.*, 894 A.2d 750 (Pa. Super. Ct. 2006), which construed a virtually identical remedy in the workers compensation context. In *Maryland Casualty*, the Superior Court affirmed a dismissal, for failure to exhaust administrative remedies, of the defendant's counterclaim. The defendant alleged that the plaintiff applied an improper rate classification, so as to inflate the premiums owed for workers compensation insurance coverage. The court concluded that the Workers Compensation Act, 77 Pa. Cons. Stat. Ann. § 1035.17, in conjunction with the Pennsylvania Workers Compensation Manual, provided the exclusive remedy for the defendant's claim. Section 1035.17 stated:

> (a) Each rating organization and every insurer to which this article applies which makes its own rates shall provide within this Commonwealth reasonable means whereby any person aggrieved by the application of its rating system may be heard in person or by the person's authorized representative on the person's written request to review the manner in which such rating system has been applied in connection with the insurance afforded the aggrieved person. For the purposes of this section, "reasonable means" shall include at least the following:
>
> (1) A committee to hear the appeals of aggrieved persons which is comprised of an equal number of representatives of employers and insurers.
>
> (2) If travel is required for the aggrieved person to be heard in person, reimbursement to the aggrieved person for reasonable travel expenses.
>
> (b) If the rating organization or insurer fails to grant or reject the aggrieved person's request within thirty (30) days after it is made, the applicant may proceed in the same manner as if the application had been rejected.
>
> (c) Any party affected by the action of that rating organization or insurer on the request may, within thirty (30) days after written notice of that action, make application in writing for an appeal to the commissioner, setting forth the basis for the appeal and the grounds to be relied upon by the applicant.
>
> (d) The commissioner shall review the application and, if the commissioner finds

>that the application is made in good faith and that it sets forth on its face grounds which reasonably justify holding a hearing, the commissioner shall conduct a hearing held on not less than ten (10) days' written notice to the applicant and to the rating organization or insurer. The commissioner, after hearing, shall affirm or reverse the action.

77 PA. CONS. STAT. ANN. § 1035.17.

Although I respect the reasoning of my colleagues in *Cohen* and *Markocki*, I am persuaded by the reasoning of *Uyehara* and *White* that *Maryland Casualty* warrants dismissal of the instant case because the remedy established by Section 910-44(b) is indistinguishable from the remedy found to be exclusive in *Maryland Casualty*. Both the statute in that case and the one in this case require insurers to provide a means by which an individual aggrieved by the application of the insurer's rating system may be heard. Both statutes establish that, from there, the aggrieved party "may" appeal to the commissioner, who has the ability to affirm or reverse the insurer's decision. *Compare* 77 PA. CONS. STAT. ANN. § 1035.17 (aggrieved party "may, within thirty (30) days after written notice of that action, make application in writing for an appeal to the commissioner") *with* 40 PA. CONS. STAT. ANN. § 910-44(b) (aggrieved party "may, within thirty days after written notice of such action, appeal to the commissioner"). Furthermore, this Court agrees with *Uyehara* and *White* that the word "may" in Section 910-44(b) gives the insured discretion to pursue an appeal to the commissioner, but does not render the entire remedy discretionary.[1]

Plaintiff's efforts to distinguish *Maryland Casualty* are unpersuasive. Plaintiff asserts that

---

[1] Despite the general principle recognized by *Cohen*, that "'may' as contrasted with 'shall' signals a discretionary rather than a mandatory act," none of the cases cited by *Cohen* were decided in the context of exhaustion of administrative remedies, nor did they involve statutes similar to the one at issue in this case. *See Cohen*, 2006 WL 1582320, at *2; *see also Commonwealth v. Williams*, 828 A.2d 981, 988 (Pa. 2003) (noting, in the context of interpreting a rule of criminal procedure, that "[t]he statutory word 'may' as opposed to the word 'shall' signals a discretionary rather than a mandatory act").

9

*Maryland Casualty* is distinguishable because the Workers Compensation Act requires establishment of a dispute resolution committee comprised of an equal number of representatives of employers and insurers, while TICA only requires the establishment of an internal procedure by the insurer. (Pl.'s Mem. of Law in Supp. of Pl.'s Opp'n to Mot. to Dismiss [hereinafter "Pl.'s Mem."] at 18.)  This distinction is critical, according to Plaintiff, because "the doctrine of exhaustion of administrative remedies applies only to administrative agencies, not to dispute resolution bodies selected solely by a private insurance company." (*Id.* (emphasis omitted) (citing *Terminato*, 645 A.2d 1287).)

In *Terminato*, the Pennsylvania Supreme Court held that the plaintiff, who sued her insurer for breach of contract, was not required to exhaust administrative remedies.  An amendment to the Motor Vehicle Financial Responsibility Law required insurers to contract with peer review organizations ("PRO") to evaluate treatment, products or services provided to a person injured in an automobile accident.  The statute required that an insurer submit its challenge of a medical provider's bill to the PRO, within ninety days of receiving the bill, so that the PRO could evaluate the reasonableness and necessity of the treatment or services provided.  The statute also permitted an insurer, provider or insured to request reconsideration from the PRO after the PRO's initial decision, but did not provide for any appeal to an administrative agency.

The insurer challenged certain of the plaintiff's medical bills and received a favorable ruling from the PRO.  The plaintiff subsequently brought suit for breach of contract.  The Pennsylvania Supreme Court rejected the defendant-insurer's argument that the plaintiff was required to request reconsideration from the PRO prior to filing suit.  The court explained that "[t]he doctrine of exhaustion of administrative remedies has no application to the peer review procedure." *Terminato*, 645 A.2d at 66.  This was because "[a] peer review organization is not an administrative agency, a

10

court of record, or a tribunal authorized to resolve disputes arising out of an automobile insurance policy." *Id.* Instead, the purpose of the PRO was to assist the insurer in determining whether a questioned treatment is medically necessary. *Id.* at 68 ("Unlike an administrative agency, a PRO simply lends its expertise to an insurer and has no statutory authority to resolve disputes."). Furthermore, the fact that the insurer alone participated in the peer review process indicated that the PRO was established as a cost-containment mechanism as opposed to a dispute resolution procedure.

The provision for administrative process in Section 910-44(b) of TICA clearly distinguishes it from the statute at issue in *Terminato*. Section 910-44(b) provides for an appeal to the Commissioner after the aggrieved individual has availed itself of the insurer's internal dispute resolution procedures. Section 910-44(b) also grants the Commissioner the ability to provide relief by affirming or reversing the insurer's application of its rate. Furthermore, while the peer review process in *Terminato* was one-sided and only required the insurer's input, Section 910-44(b), although it allows insurers to establish their own internal process, requires that an aggrieved individual (or his representative) be heard. Thus, Section 910-44(b) contemplates a proceeding in which both sides are represented and disputes are potentially resolved, followed by an appeal to the Commissioner if the individual so chooses. Accordingly, TICA is unlike the law in *Terminato* and more akin to the section of the Workers Compensation Act at issue in *Maryland Casualty*.[2]

---

[2] Likewise, many of the authorities on which Plaintiff relies in her opposition are unpersuasive because, in those cases, as in *Terminato*, no applicable statutory remedy existed. *See, e.g., Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1188 (Pa. 2007) ("We hold that [the section alleged to provide the administrative remedy plaintiff was required to exhaust] does not purport to set forth a remedy to providers, much less an exclusive one."); *Ciamaichelo v. Independence Blue Cross*, 909 A.2d 1211, 1217 (Pa. 2006) (plaintiffs who alleged that the defendant, an excess health care insurer, violated the Nonprofit Corporation Law and breached contractual and fiduciary duties by accumulating an excess surplus for impermissible purposes were not required to exhaust administrative remedies; lower court incorrectly read complaint as

Plaintiff also relies by analogy on case law concluding that the Unfair Insurance Practices Act ("UIPA") does not preclude the filing of common law or statutory claims, including CPL claims, in court.[3]  *See Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160 (3d Cir. 2001); *Hardy v. Pennock Ins. Agency, Inc.*, 529 A.2d 471 (Pa. Super. Ct. 1987); *Pekular v. Eich*, 513 A.2d 427 (Pa. Super. Ct. 1986).  In *Pekular*, the Superior Court concluded that the UIPA did not extinguish the plaintiffs' common law fraud claims because, pursuant to the Statutory Construction Act, the "provision in a statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of violation of such statute."  *Pekular*, 513 A.2d at 430 (quoting 1 PA. CONS. STAT. ANN. § 1929).  Thus, the mere fact that the UIPA empowered the Commissioner to impose penalties on those guilty of unfair trade practices did not extinguish a victim's ability to seek redress through the common law.  The court further held that the UIPA did not preclude the plaintiffs' CPL claim, finding "no inconsistency between the UIPA providing for administrative investigation and an imposition of limited penalties and the CPL providing a means by which a consumer may privately seek compensation for wrongs allegedly suffered."  *Id.* at 434; *see also Highmark*, 276 F.3d at 167-70 (UIPA did not bar Lanham

---

request for the court to "second-guess an approved rate"); *Ohio Cas. Group of Ins. Cos. v. Argonaut Ins. Co.*, 525 A.2d 1195, 1198 (Pa. 1987) (finding no failure to exhaust where Health Care Services Malpractice Act provided "no statutorily prescribed procedure which has been mandated for [plaintiff-insurer] to follow"); *Citizens' Ambulance Serv., Inc. v. Gateway Health Plan*, 806 A.2d 443, 447 (Pa. Super. Ct. 2002) (ambulance service asserting contract and unjust enrichment claims against health plan for reimbursement based on public rate as opposed to rate set by Department of Public Works ("DPW") was not required to exhaust administrative remedies because "neither [defendant] nor DPW have cited to any provision of law that requires [plaintiff] to accept the DPW rate as reimbursement for services provided," and, irrespectively, remedy was inadequate because DPW had no authority to award damages).

[3] As noted above, *Cohen* also relied on this line of cases.

Act claim); *Hardy*, 529 A.2d 471 ("[T]he [UIPA], wherein penalties are properly enforced by the Insurance Commissioner, does not represent the sole and exclusive source of statutory redress of alleged unfair or deceptive acts of insurers and their agents.").

Crucial differences between UIPA and TICA's statutory schemes render these cases inapplicable. The UIPA was intended to regulate the insurance industry by defining and prohibiting unfair trade practices, *see* 40 PA. CONS. STAT. ANN. § 1171.2, and vests in the Commissioner the power to conduct administrative investigations of those suspected of unfair trade practices, impose penalties upon those who have engaged in such practices and seek civil penalties or an injunction in court. *See id.* §§ 1171.7-1171.11. It explicitly declares that the Commissioner's powers pursuant to the UIPA "are additional to any other powers to enforce penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices declared to be unfair and deceptive." *Id.* § 1171.13. However, the UIPA provides no remedy for an insured to invoke when he is the victim of an insurer's conduct and does not authorize the Commissioner to grant relief to any such victim. In contrast, TICA authorizes the Commissioner to impose penalties on those who violate its provisions *and*, in a separate section, Section 910-44(b), provides remedies for those aggrieved by an insurer's application of its rate.[4] 40 PA. CONS. STAT. ANN. §§ 910-44(b), 910-48; *see also id.* § 910-49 (providing remedy for those aggrieved by an action of the Commissioner). This critical difference — TICA's provision of specific remedies for an insured and the absence of such remedies in UIPA — renders the cases upon which Plaintiff relies inapposite. *See Pekular*, 513 A.2d at 434 ("We see

---

[4] Section 910-48's statement that any penalties imposed by the Commissioner shall be in addition to other penalties provided for by law pertains to the additional resources available to the Commissioner, not the remedies available to the insured. Section 910-44(b) is silent as to additional remedies at law. *See Uyehara*, 2008 WL 2227295, at *3 n.2; *White*, 2008 WL 227297, at *3 n.1.

no inconsistency between the UIPA *providing for administrative investigation and imposition of limited penalties* and the CPL providing a means by which a consumer may privately seek compensation for wrongs allegedly suffered.") (emphasis added). Furthermore, case law addressing the UIPA in this context actually requires dismissal of Plaintiff's CPL claim to the extent it is premised on a TICA violation. *See Gordon v. Pa. Blue Shield*, 548 A.2d 600, 603 (Pa. Super. Ct. 1988) (where plaintiff alleged CPL violation based on the defendant's violation of UIPA, court lacked jurisdiction: "whether raised as a primary contention . . . or as a secondary claim set forth as the basis of another claim, as in the instant case, an alleged violation of the [UIPA] cannot and will not be entertained by this Court."); *see also Moy v. Schreiber Deed Sec. Co.*, 572 A.2d 758, 761 (Pa. Super. Ct. 1990) ("[W]e hold that the same reasoning applied in *Gordon* concerning the [UIPA] and the CPL applies with equal force to the case before us concerning violations of [TICA] and the CPL.")

Plaintiff also attempts to invoke an exception to the exhaustion rule, which permits a court to exercise jurisdiction when the statutory remedy is found to be inadequate. *See Feingold v. Bell Tel. Co. of Pa.*, 383 A.2d 791, 793 (Pa. 1978) ("[A] court may exercise jurisdiction where the administrative remedy is inadequate."). In *Feingold*, the Supreme Court of Pennsylvania permitted the plaintiffs' claims for damages and injunctive relief arising out of the defendant's disconnection of certain telephone services and failure to provide other requested services to proceed. The court rejected the defendant's argument that the plaintiffs were required to exhaust administrative remedies under the Public Utility Law. That law granted the Public Utility Commission the power to correct abuses in the provision of service by regulation or order, to impose fines upon a public utility for violation of the act, and to proceed to court to seek judicial enforcement. However, the statute did

not authorize the Commission to award damages to an individual. Accordingly, the court concluded that the statutory remedy was inadequate and did not bar the plaintiffs' action.

*Feingold* is distinguishable because the remedy proscribed by Section 910-44(b) provides a means for individuals injured by an insurer's application of its rate to bring their claim to the Commissioner, who is authorized by the statute to grant a refund. *See Welsch v. Aetna Ins. Co.*, 494 A.2d 409, 413 (Pa. Super. Ct. 1985) (recognizing that "general language directing aggrieved persons to obtain a review of [a] challenged rate by the Commissioner" authorizes Commissioner to give refund). In contrast, the statutory scheme in *Feingold* did not provide a procedure for a customer aggrieved by a public utility to obtain monetary relief. This crucial difference renders Plaintiff's reliance on *Feingold* unpersuasive, especially in light of *Maryland Casualty*, which found that a statutory scheme nearly identical to the one here provided an adequate remedy.[5] *See Uyehara*, 2008 WL 2227295, at *5-6, 6 n.3 (Section 910-44(b) provides adequate remedy); *White*, 2008 WL 227297, at *5-6 n.3 (same). Section 910-44(b) proscribes an adequate remedy specifically for those aggrieved by the application of an insurer's rating system. Plaintiff's claim that United General overcharged her and others based on its application of the basic rate, instead of the reissue or refinance rate, falls squarely within the scope of this provision.

**IV.   CONCLUSION**

For the above reasons, the Court concludes that Section 910-44(b) of TICA provides a

---

[5] Nor is the Court persuaded that Plaintiff's requests for punitive damages or, pursuant to the CPL, treble damages and attorney's fees render the statutory remedy inadequate since Plaintiff can be made whole by pursuing the remedy set forth in Section 910-44(b). *See Feingold*, 383 A.2d at 796 (remedy was not adequate because "appellant could not have been made whole by the PUC.").

mandatory statutory remedy that Plaintiff was required to exhaust prior to seeking relief from this Court.[6]  Plaintiff's Amended Complaint must therefore be dismissed for lack of subject matter jurisdiction because she has failed to exhaust administrative remedies.  An appropriate Order follows.

---

[6] Given this conclusion, the Court need not address United General's arguments regarding Plaintiff's alleged failure to state a claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH M. AMATO,** on behalf of herself and all others similarly situated, | : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | |
| **UNITED GENERAL TITLE INSURANCE COMPANY,** | : : | |
| Defendant. | : : | No. 08-3423 |

# ORDER

**AND NOW**, this **17th** day of **March, 2009**, upon consideration of Defendant's motion to dismiss, Plaintiff's response thereto, and Defendant's reply thereon and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendant's motion (Document No. 25) is **GRANTED**.

2. Plaintiff's Amended Complaint is **DISMISSED**.

3. The Clerk of Court is directed to close this case.

BY THE COURT:

*/s/ Berle M. Schiller*
**Berle M. Schiller, J.**